IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT D. RICARDO,<br><br>                   Petitioner,<br><br>vs.<br><br>M. MARTEL, Warden,<br><br>                   Respondent. | Case No: 2:08-cv-02342-JKS<br><br><br>MEMORANDUM DECISION |

Petitioner, Robert D. Ricardo, a state prisoner proceeding *pro se*, has filed a Petition for

Writ of Habeas Corpus under 28 U.S.C. § 2254.  Ricardo is currently in the custody of the

California Department of Corrections, incarcerated at the Mule Creek State Prison, in Ione,

California.  Respondent has filed an answer, and Ricardo has filed a traverse.

Statement of the Facts

The following statement of the facts is taken verbatim from the decision of the California

Court of Appeal, First District:[1]

> This appeal arises from the rape of a 14-year-old victim . . . by [Ricardo] and his
> codefendant, Santonio Reese.
> On October 19, 2004, [the victim] got out of school around two-thirty or three in
> the afternoon, and got onto a bus to go to the house of a friend named Maribelle who
> lived in Suisun. After [the victim] got off the bus and was walking towards Maribelle's

---

[1]  *People v. Ricardo*, 2007 WL 1276962 (Cal. App. May 2, 2007).  Under the
Antiterrorism and Effective Death Penalty Act of 1996, the determination of these facts is
presumed to be correct, and Jackson has the burden of rebutting that presumption by "clear and
convincing evidence."  28 U.S.C. § 2254(e)(1).

house, [the victim] was hailed on the street by two young males driving by. A young man subsequently identified as [Ricardo] was driving, and he had a male passenger, subsequently identified as Santonio Reese (Reese), with him in the front seat on the passenger side.

The two males started talking to [the victim], and began trying to persuade her to "hang out" with them. Eventually, [the victim] agreed, and got into the car. She sat in the back. She noticed that the male who had previously been on the passenger side in the front seat, i.e., not [Ricardo], had a distinctive tattoo on his arm, showing a cross and words or names, saying, "Lil" and "Tone." They all drove to [Ricardo's] house.

After they got to [Ricardo's] house, they began talking in the garage and [the victim] told the young men that she was not a "ho" and did not want to do anything sexual with them. Later they started watching television in a bedroom. They all began drinking Jack Daniels whiskey straight from the bottle; [the victim] had a big drink. [Ricardo's] dad came to the door of the bedroom at some point to check to see if there was anyone present besides [Ricardo], but [the victim] hid, and [Ricardo] assured his dad that there was no one else present.

After [Ricardo's] dad left, the young people kept on drinking. The bottle had been full when they started, but it went down to about half full. Reese began trying to touch her in a sexual way. [The victim] resisted and pushed him off, and told him to get off of her. [Ricardo] also began touching her in a sexual way. Then Reese tried to get on top of her again, but she tried to push him away. Then she passed out.

According to the testimony of Reese, who testified against [Ricardo] at trial after making a plea bargain, [Ricardo] took off the victim's clothes and began placing his penis into her vagina for about 15 or 20 minutes, while Reese grabbed her breasts. At some point the victim fell off the bed and hit her head, and then [Ricardo] and Reese dressed her again and drove her to another neighborhood, where they left her in the front yard of a house. She was later found by the police, bleeding and in pain from her vagina.

An examination of the victim by a nurse showed bleeding and injury to her vagina, and other injuries such as an abrasion on her face, and scratches and bruises on other parts of her body. The vaginal injuries were consistent with "a lot of trauma-blunt trauma or force against that area or repeated rubbing with poor lubrication."

[The victim] was interviewed by the police. She described the two young men who had attacked her to Officer Erik Watts, who testified at trial. She described the distinctive tattoos on the arms of the suspect later identified as Reese, and she described [Ricardo] and his home. After she had been drinking, Reese tried to get on top of her, and pinned her arms to the bed, but she began yelling and forced him off. Then [Ricardo], who had been standing behind her, pulled her pants down, exposing part of her buttocks. [The victim] could see that his pants were pulled down, and his erect penis was exposed.[2]

---

[2]  Shortly following the attack, the victim told police officers that Ricardo pulled her pants partially down, exposing part of her buttocks, and then climbed on top of her with his penis exposed.  At trial, Ricardo claims that she changed her story and testified that Reese was the one who climbed on top of her.  To the extent that the victim gave differing accounts of the events,

[Ricardo] got on top of her on the bed, but she pushed him off. Then the two young men talked to each other, and Reese got back on top of her, pinning her to the bed. That was the last thing she could recall at the house.

A concerned citizen learned from a newspaper article about the victim's description of the distinctive tattoos on the arms of one of the suspects, and called the police to tell them that a young man she knew as "Tone" had dated her younger sister, and had tattoos like that. She told the police where "Tone" lived.

The day after the rape, [Ricardo] warned Reese not to talk to anyone about the rape. However, Reese told some people at school, and he and [Ricardo] got into a fight about it, which their teacher had to break up.

Procedural History

Ricardo was charged with the crimes of Rape in Concert, Rape by the Use of Intoxicants, and Rape of an Unconscious Victim (Califonia Pen.Code, §§ 264.1, 261(a)(3), 261(a)(4) respectively).  After a jury trial, Ricardo was convicted on all counts and sentenced to seven years in prison on the Rape in Concert count, with sentences stayed on the other counts.

Ricardo appealed his conviction and on May 2, 2007, the California Court of Appeal, First District, affirmed the judgment.  Ricardo filed a Petition for Review in the California Supreme Court, which was denied on July 11, 2007.

Ricardo then filed a Petition for Writ of Habeas Corpus in the California Court of Appeal on August 26, 2008.  He added two claims to the petition on September 16, 2008, and the petition was denied on September 25, 2008.  In order to exhaust claims not raised on direct appeal, Ricardo filed additional habeas petitions in the Solano County Superior Court, the California Court of Appeal, and the California Supreme Court, all of which were denied.

_____

the jury was entitled to determine which version to believe or to simply disregard both versions and acquit Ricardo.  When given facts that support conflicting inferences, this Court must presume that the jury resolved any such conflicts in favor of the prosecution and against Ricardo. *Jackson*, 443 U.S. at 318-19; *see McDaniel*, 130 S. Ct. at 673-74.  Ricardo has failed to rebut the presumption that the Court of Appeal's version of the events is correct through "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

3

Ricardo timely filed his Petition in this Court on October 3, 2008, raising three grounds for relief: 1) The evidence was insufficient to sustain his convictions; 2) both his trial counsel and appellate counsel were ineffective, and; 3) the prosecutor committed misconduct. Respondent concedes that all of Ricardo's claims are exhausted and does not contend that any of the claims are procedurally barred.

<u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[4]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[5]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

---

[3] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[4] *Williams*, 529 U.S. at 412.

[5] *Early v. Packer*, 537 U.S. 3, 10 (2002).

'unreasonabl[y] appli[ed] clearly established Federal law.'"[6]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[7]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[8]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[9]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[10]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[11]

---

[6] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[7] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[8] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[9] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[11] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis

In applying this standard, this Court reviews the last reasoned decision by the state court.[12] State appellate court decisions that affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[13] Under California's unique habeas procedure, a defendant who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal. If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[14] This is considered as the functional equivalent of the appeal process.[15] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[16] This presumption applies to state trial courts and appellate courts alike.[17]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must presume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain

_____

of little more than speculation with slight support").

[12] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[13] *Ylst*, 501 U.S. at 802-03.

[14] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002).

[15] *Id.* at 222.

[16] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[17] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

6

whether the state court decision was objectively unreasonable.[18]  In so doing, because it is not

clear that it did not so do, the Court presumes that the state court decided the claim on the merits

and the decision rested on federal grounds, giving the presumed decision the same deference as a

reasoned decision.[19]  The scope of this review is for clear error of the state court ruling on the

petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground
> by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does
> not supply reasoning for its decision, but an independent review of the record is
> required to determine whether the state court clearly erred in its application of
> controlling federal law.  Only by that examination may we determine whether the
> state court's decision was objectively reasonable.[20]

"[A]lthough we independently review the record, we still defer to the state court's ultimate

decision."[21]

Discussion

---

[18]  *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[19] *Harrington v. Richter*, 562 U.S. —, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *see Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991).

[20] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[21] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Cf. Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)."

As noted above, Ricardo raises three grounds for relief.  Because this Court's disposition of Ricardo's prosecutorial-misconduct and sufficiency-of-the-evidence claims potentially impact his claim of ineffective assistance of counsel, this Court will address those claims first.

## I.  Sufficiency of the Evidence

Ricardo claims that the evidence was insufficient to sustain his convictions for Rape in Concert, Rape by use of Drugs, and Rape of an Unconscious Person.[22]  As part of his argument, Ricardo contends that each of his rape convictions are deficient because they were based on the uncorroborated testimony of his accomplice, Santonio Reese.  This Court will address the "accomplice testimony" allegation first, and then evaluate the sufficiency of the evidence with respect to each of the convictions.

As articulated by the Supreme Court in *Jackson v. Virginia*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[23]  This Court must, therefore, determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[24]  Rather, when "faced with a

---

[22]  Ricardo did not challenge his convictions for Rape by Intoxication and Rape of an Unconscious Person on direct appeal; however, these allegations were presumably raised in state court collateral review proceedings since Respondent concedes that they are properly exhausted.

[23] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. —, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[24] *Jackson*, 443 U.S. at 318-19.

record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[25]

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[26]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[27]  This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[28]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[29]  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[30]  This is especially true where the highest court in the state has denied review of the lower court's decision.[31]

---

[25] *Id.* at 326; *see McDaniel*, 558 US —, 130 S. Ct. at 673-74.

[26] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[27] *Jackson*, 443 U.S. at 324 n. 16.

[28] *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir. 2005).

[29] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[30] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[31] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*,

## A.  Uncorroborated Accomplice Testimony of the Rape

California Penal Code § 1111 holds:

> A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Ricardo claims that the only evidence that he raped the victim was Reese's testimony identifying Ricardo as the perpetrator.  Ricardo does not deny engaging in the events that led up to the rape, but rather contends that there was no corroborating evidence that he committed the rape.  Ricardo has failed to raise an issue of constitutional dimension.  "[S]tate laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review."[32]  Unless the uncorroborated accomplice testimony is incredible and insubstantial on its face, the rule is not required by the Constitution or federal law.[33]  Reese's account of the rape was consistent with the physical evidence and not "incredible or insubstantial on its face."[34]  To the extent that Ricardo tried to implicate Reese for the rape, the two men offered differing yet plausible accounts of the events.  Where, as in this case, the question is one of credibility, the finding of the jury carries the day.[35]

Even if this Court were to review Ricardo's claim under § 1111, Ricardo would not be entitled to relief.  While § 1111 holds that "the corroboration is not sufficient if it merely shows

---

410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[32]  *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993).

[33]  *Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000).

[34]  *Id.*

[35]  *See Bruce v Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

10

the commission of the offense," "[the authenticating evidence] need not corroborate every fact to which the accomplice testified or establish the corpus delicti. . . ."[36]  Rather, corroboration "is sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth."[37]  Furthermore, "[c]orroborative evidence may be slight and entitled to little consideration when standing alone."[38]  In this case, the victim testified that after she drank alcohol, both Ricardo and Reese began to touch her in a sexual way; she resisted their advances.[39]  According to Reese, after the victim passed out, Ricardo removed her clothes and began to have sexual intercourse with her.  The victim told police officers that one of the last things she remembered before she lost consciousness was that Ricardo pulled her pants partially down, exposing part of her buttocks.[40]  The victim could see that his pants were also pulled down, and his erect penis was exposed.[41]  Shortly thereafter, the victim lost consciousness.  The victim's statements that Ricardo attempted to pull her pants off and mount her with his penis exposed shortly before she passed out certainly corroborates Reese's account.  Ricardo is not entitled to relief under this theory.

Tangentially related to this issue is Ricardo's claim that there was insufficient evidence to establish that he raped the victim.  Ricardo points to the fact that a pubic hair found on the

---

[36] *People v. Fauber*, 831 P.2d 249, 273 (Cal. 1992).

[37] *Id.*

[38] *Id.*

[39] *Ricardo*, 2007 WL 1276962 at 3.

[40] *Id.* at 2.

[41] *Id.*

victim's vagina was not his as proof of his innocence.  There is overwhelming evidence that the victim was violently raped:[42] when she awoke, she had pain and blood in her vagina, and her underwear were inside out.  She had not put her underwear on backwards that morning when she dressed.  An examination of the victim by a nurse showed bleeding and injury to her vagina and other injuries such as an abrasion on her face and scratches and bruises on other parts of her body.  Her vagina was inflamed, reddened, and looked like it had been rubbed raw.  There was also a narrow split in the skin of the vaginal area probably caused by hard manipulation of the genitals and bleeding which was caused by blunt trauma or force against the area or repeated rubbing with poor lubrication.[43]  This evidence, coupled with her testimony, would allow the jury to conclude that she had been raped.

There was also sufficient evidence that Ricardo was the one who committed the rape.  As discussed above, one of the last things she remembered before she blacked out was Ricardo pulling her pants partially off and mounting her with his erect penis exposed.  This, along with Reese's testimony that Ricardo committed the rape is sufficient to support a finding that Ricardo had sexual intercourse with the victim while she was unconscious.

<u>B.  Rape in Concert</u>

In order to sustain a conviction for Rape In Concert under Cal. Penal Code, § 264.1, the prosecution must submit evidence that "the defendant, voluntarily acting in concert with another

---

[42]  In his Traverse, Ricardo posits that the victim was sexually active and sustained the injuries to her vagina while willingly having intercourse with someone else; the rape allegations were simply an attempt to hide her sexual activity from her parents.  This hypothesis is completely unsupported and flies in the face of all the physical evidence.

[43]  RT Vol. III, pp. 108, 113-128.

person, by force or violence and against the will of the victim, committed [a rape]."  Ricardo

claims that there was insufficient evidence to show that the rape was accomplished through the

use of force or violence.  Ricardo raised this issue on direct appeal, and the California Court of

Appeals rejected it, holding:

> [Ricardo] contends there was insufficient evidence of the use of force or violence
> to support a conviction for rape in concert. Under the deferential standard of review we
> apply in this appeal, we disagree.
> As [Ricardo] contends and the People concede, a conviction for rape in concert
> requires a showing that the rape was accomplished by "force or violence." (Pen.Code,
> § 264.1; see also People v. Griffin (2004) 33 Cal.4th 1015, 1023-1024, 1029 ( Griffin );
> In re Jose M. (1994) 21 Cal.App.4th 1470, 1477 ( Jose M.).) However, no particular level
> of strong or overwhelming force need be shown; it is enough if the evidence shows the
> use of force sufficient to determine that the act of intercourse was against the victim's
> will. ( Griffin, supra, at pp. 1023-1024.) For instance, pinning the arms of a victim is
> sufficient. ( Ibid.) In addition, a forcible rape is shown if the victim attempts to resist, but
> the perpetrator uses force to continue or accomplish the act. ( In re John Z. (2003) 29
> Cal.4th 756, 760-763.)
> In the present case, the evidence shows that the victim resisted and pushed her
> attackers away as long as she was conscious, despite being pinned to the bed. In addition,
> even through the victim was unconscious at the time of the vaginal penetration, the
> evidence also shows bleeding and injury to her vagina, and other injuries such as an
> abrasion on her face, and scratches and bruises on other parts of her body. The injuries to
> the vagina were consistent with "a lot of trauma-blunt trauma or force against that area."
> Taken as a whole, and viewed under the deferential standard of review we must apply,
> this evidence constituted a sufficient showing of the use of force or violence. (See
> Griffin, supra, 33 Cal.4th at p. 1028.)[44]

This Court may only grant relief if this decision involved an unreasonable application of

established federal law or an unreasonable determination of the facts.  The California courts have

held "the prosecution need only show the defendant used physical force of a degree sufficient to

support a finding that the act of sexual intercourse was against the will of the [victim]."[45]   As the

---

[44] *Ricardo*, 2007 WL 1276962 at *3.

[45] *People v. Griffin*, 94 P.3d 1089, 1094 (Cal. 2004).

Court of Appeal noted, there is significant evidence that Ricardo used force to overcome the victim's will.  The victim resisted the defendants' advances, and as the two men became more aggressive and pinned her to the bed, she pushed them off repeatedly until she lost consciousness.  The record clearly shows that Ricardo and Reese used a combination of physical force and alcohol to subdue the victim.  The fact that she was no longer able to fight back at the time of penetration does not negate their use of force.[46]  Ricardo has failed to show that the decision of the California Court of Appeal was contrary to federal law or constituted an unreasonable determination of the facts.  Ricardo is not entitled to relief on this ground.

C.  Rape by Use of Drugs

Ricardo argues that there is no evidence that he used a drug to subdue the victim.  As noted above, when there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must presume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[47]  In so doing, because it is not clear that it did not so do, this Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds, giving the presumed decision the same deference as a reasoned decision.[48]

---

[46]  Ricardo contends that, because the victim was unconscious at the time of penetration, she was not resisting, and he was not using any force during the rape itself.  Traverse, p. 5.

[47]  *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742.

[48]  *Harrington*, 562 U.S. —, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *see Harris*, 489 U.S. at 263; *Coleman*, 501 U.S. at 740.

Cal. Penal Code, § 261(a)(3) defines Rape by Use of Drugs as intercourse "[w]here a [victim] is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused."  In this case, Ricardo and Reese brought the victim back to Ricardo's house and gave her Jack Daniel's Whiskey, and she took one large drink.  After the three drank approximately half of the bottle, Reese and Ricardo began to touch the victim in a sexual way, becoming more aggressive as she resisted.  Finally, the victim passed out from intoxication at which point Ricardo fully removed her clothes and raped her.[49]  The victim testified that Ricardo provided her with whiskey–certainly an intoxicating substance– from which a reasonable juror could conclude that he knew or reasonably should have known that she was intoxicated at the time she lost consciousness.  Ricardo has failed to show that there was insufficient evidence that he used alcohol to overcome the victim's resistence to his sexual advances.  Ricardo is not entitled to relief on this ground.

### D.  Rape of an Unconscious Person

Ricardo argues that there is no evidence that he raped the victim while she was unconscious.  Since there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must presume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[50]  In so doing, because it

---

[49] *Ricardo*, 2007 WL 1276962 at *1.  To the extent that Ricardo claims that Reese's testimony was insufficient to prove that he committed the rape, this argument is foreclosed by this Court's discussion in Section A above.

[50] *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742.

is not clear that it did not so do, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds, giving the presumed decision the same deference as a reasoned decision.[51]

Cal. Penal Code, § 261(a)(4) defines Rape of an Unconscious Person as intercourse "[w]here a [victim] is at the time unconscious of the nature of the act, and this is known to the accused.  As used in this paragraph, "unconscious of the nature of the act" means incapable of resisting because the victim meets one of the following conditions:

> (A) Was unconscious or asleep.
> (B) Was not aware, knowing, perceiving, or cognizant that the act occurred.
> (C) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraud in fact.
> (D) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the sexual penetration served a professional purpose when it served no professional purpose.

In this case, there is significant evidence that Ricardo committed the rape while the victim was unconscious, and this was known to him.  As noted above, the victim testified that she lost consciousness shortly after Ricardo mounted her with his penis exposed.  Reese then testified that Ricardo had sex with the victim (while she was unconscious) for 15 or 20 minutes, during which time she fell off the bed and struck her head.[52]  Thus, a reasonable juror could have concluded that Ricardo committed the rape while he knew the victim was unconscious.  Ricardo is not entitled to relief on this ground.

---

[51] *Harrington*, 562 U.S. —, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *see Harris*, 489 U.S. at 263; *Coleman*, 501 U.S. at 740.

[52] *Ricardo*, 2007 WL 1276962 at *1.  To the extent that Ricardo claims that Reese's testimony was insufficient to prove that he committed the rape, this argument is foreclosed by this Court's discussion in Section A above.

## II.  Prosecutorial Misconduct

Ricardo claims that the prosecution committed misconduct because it used Reese's false testimony to obtain Ricardo's conviction and urged the jury to disregard the "hair evidence" which Ricardo claims proves his innocence.  This Court will address each of these claims separately.

### A.  Use of False Testimony

"[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."[53] There is no  evidence that the prosecutor in this case knowingly used false or perjured testimony, the essential elements of prosecutorial misconduct.[54]  Ricardo highlights several areas in which Reese's testimony was inconsistent–several of Reese's out of court statements to officers were inconsistent with his trial testimony.  However, this standing alone is insufficient to prove prosecutorial misconduct.[55]  The fact that the prosecution presented witnesses with contradictory stories of the details of the incident does not necessarily lead to the conclusion that the prosecutor knowingly introduced false or perjurious testimony absent evidence that the

---

[53] *United States v. Agurs*, 427 U.S. 97, 103 (1976).

[54] *See Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir. 2001).

[55] *See United States v. Zuno-Arce,* 44 F.3d 1420, 1423 (9th Cir. 1995) (refusing to reverse where defendant "offered no evidence whatsoever for prosecutorial misconduct except for the inference from discrepancies"); *United States v. Wolf,* 813 F.2d 970, 976-77 (9th Cir. 1987) (discrepancies in witness testimony, subject to cross-examination, did not constitute grounds for reversal).

prosecutor *knew* which story was false.[56]  "Lawyers in criminal cases, for prosecution and defense, sometimes swim in a sea of lies, and must necessarily trust the jury to determine what is true, or whether reasonable doubt remains about what is true."[57]  "Discrepancies in the testimony . . . could as easily flow from errors in recollection as from lies," and it is hard to see how the prosecutor could have known that Reese was lying on the stand.[58]  Ricardo has failed to allege, let alone show, that the prosecutor *knowingly* elicited false testimony from Reese.  Ricardo is not entitled to relief on this claim.

### B.  Statements During Closing Argument

Although Ricardo's specific claim is not clearly articulated, it appears that he is claiming that the prosecutor improperly told the jury that Reese's testimony was believable because there was no corroborating evidence connecting him to the crime and his story was consistent with the physical evidence.  Ricardo also argues the prosecutor misled the jurors by telling them to disregard the hair evidence.

"Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom."[59]  "But, while [the government] may strike hard blows, [it] is not at liberty to strike foul ones."[60]  "[A] court should not lightly infer that a prosecutor intends

---

[56] *United States v. Sherlock*, 962 F.2d 1349 (9th Cir. 1989).

[57]  *Zuno-Arce*, 44 F.3d at 1423.

[58]  *Id.*

[59] *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996).

[60] *Berger v. United States*, 295 U.S. 78, 88 (1935).

an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."[61]

Because it is reasonable to infer where there are two conflicting stories that one of the two sides is being untruthful, it is not improper for the prosecutor to argue why one should be believed and the other disbelieved.[62]  The prosecutor in this case was fully entitled to urge the jury to believe Reese's version of the events as truthful because his testimony was consistent with the physical evidence, he had cooperated fully with the police, and there was no corroborating evidence connecting him to the crime.[63]  Ricardo has failed to show that the prosecutor's comments during closing arguments were improper, let alone that they so "infected the trial with unfairness as to make the resulting conviction a denial of due process."[64]

The prosecutor did not commit misconduct by urging the jury to disregard the evidence that two pubic hairs from a person other than Ricardo were found in the victim's genital area during the post-rape examination.  "Prosecutors must have reasonable latitude to fashion closing argument, and thus can argue reasonable inferences based on the evidence."[65]  Despite Ricardo's contentions to the contrary, the fact that another person's pubic hair was discovered during the post-rape examination does not exculpate him.  This evidence was a red herring because it did not tend to negate or prove that the victim was raped by Ricardo.  The prosecutor was certainly

---

[61] *Donnelly*, 416 U.S. at 647.

[62] *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).

[63]  RT Vol. III, p. 520.

[64] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

[65]  *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993).

entitled to urge the jury to conclude that the hair evidence was irrelevant to Ricardo's innocence or guilt in this case. Ricardo has not shown that the prosecutor committed prejudicial misconduct.

III. Ineffective Assistance of Trial Counsel and Appellate Counsel

Although his Petition is rather unclear, Ricardo appears to claim that his trial counsel was ineffective because he failed to make a motion to present expert testimony on the implications of the hairs found in the victim's underwear. Ricardo claims that his appellate counsel was ineffective because counsel failed to challenge Reese's accomplice testimony and also failed to raise the claims of insufficient evidence and prosecutorial misconduct.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[66] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[67] Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[68] An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding

---

[66] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[67] *Id.*

[68] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

20

was fundamentally unfair or unreliable, is defective."[69]  In reviewing ineffective assistance of

counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[70]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims

under the § 2254(d)(1) standard.[71]

Ricardo bears the burden of proving that counsel's trial strategy was deficient.  "[T]he

defendant must overcome the presumption that, under the circumstances, the challenged action

'might be considered sound trial strategy.'"[72]  "[He] bears the heavy burden of proving that

counsel's assistance was neither reasonable nor the result of sound trial strategy."[73]  "In

---

[69] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

[70] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420 (2009).

[71] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[72] *Strickland*, 466 U.S. at 689.

[73] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

21

determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[74]  "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."[75]

### A.  Ineffective Assistance of Trial Counsel

Although Ricardo's Petition is somewhat unclear on this point, it appears that he is claiming that his counsel failed to use the hair evidence to attack the victim's credibility regarding her sexual behavior.  According to Ricardo, his trial counsel could have raised a strong reasonable doubt as to his guilt by using the hair evidence to attack the victim's credibility because it could have proved that the victim was sexually active.[76]  Whether the victim was sexually active was not material or relevant to prove or negate proof that she was raped or that Ricardo was the one who raped her.  Even Ricardo concedes that there was no evidence that anyone other than he and Reese were involved in the events of October 19, 2004.[77]  Ricardo has

---

[74] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[75] *Strickland*, 466 U.S. at 681.

[76]  As Ricardo concedes, the "hair evidence" was allowed for the limited purpose of showing third party culpability.  The only way that this evidence could have been used to attack the victim's credibility is if she testified that she was not sexually active.  However, neither the Petition, the Response, nor the Traverse clarify whether the victim claimed not to be sexually active.

[77]  Traverse, p. 11.

failed to articulate how the victim's sexual history–if one existed–tended to prove his innocence or show that she was less credible.

Furthermore, the hair evidence in this case did not provide proof that the victim was sexually active; even the defense expert testified that hair is transferred regularly between family members and even strangers.[78]  Thus, even if the victim had claimed that she was not sexually active, counsel could have made a reasonable, strategic decision not to attack the credibility of a 14-year-old rape victim on a collateral matter, using inconclusive impeachment evidence. Counsel's decision on this matter is entitled to deference, and Ricardo is not entitled to relief on this ground.

### B.  Ineffective Assistance of Trial Counsel

In his final claim, Ricardo contends that his appellate counsel was ineffective because counsel failed to challenge Reese's accomplice testimony and failed to raise the claims of insufficient evidence and prosecutorial misconduct on direct appeal.

The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[79]  In this case, each of Ricardo's claims–that Reese's testimony was uncorroborated, that the evidence was insufficient to support his convictions, and prosecutorial misconduct–is without merit.  Thus, Ricardo's appellate counsel was under no obligation to raise them on direct appeal.  Ricardo has failed to show that his appellate counsel's

---

[78]  RT Vol. III, pp. 470-471.

[79]  *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

performance was either deficient or that, had his appellate counsel raised these issues, the outcome would have likely been different.  Ricardo is not entitled to relief on this ground.

<u>CONCLUSION AND ORDER</u>

Ricardo is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[80]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[81]

The Clerk of the Court is to enter judgment accordingly.

Dated: July 13, 2011

_____/s/ James K. Singleton, Jr._____
**JAMES K. SINGLETON, JR.**
United States District Judge

---

[80]  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)).

[81]  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.